MORRIS NACHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM L. TOBIAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15990, 15991. Promulgated June 30, 1949.

*Malvern B. Fink, Esq.*, for the petitioners.
*Newman A. Townsend, Jr., Esq.*, for the respondent.

1206

**OPINION.**

KERN, *Judge*: Whether petitioners can avail themselves of a deduction in the one year before us for the total sum expended by them for the acquisition of an annual retail liquor license, and the reasonably anticipated privilege of periodic renewal thereof, is the single issue presented to us. It is the contention of petitioners that the entire $8,000 payment expended for this purpose is an allowable deduction, either as an ordinary and necessary business expense under section 23 (a) of the Internal Revenue Code,[1] or as a loss sustained in a transaction entered into for profit which was not compensated for by insurance or otherwise, under section 23 (e) of the code.

Respondent, however, determined that of the expenditure of $8,000, the amount of $7,687.50 was a capital expenditure for the acquisition not only of the retail license for the year ended September 30, 1944, but also for the privilege of the renewal of such license during subsequent years. He considered the renewal privilege as a valuable property right because the number of liquor licenses issued by the city of Jacksonville was limited and because the city authorities had followed the practice each year since 1941 of renewing the licenses of the previous holders. Respondent supports his view by relying upon *William Zakon*, 7 B. T. A. 687; *McAvoy Co.*, 10 B. T. A. 1017; *Best Brewery Co.*, 16 B. T. A. 1354; *Elston Co.* v. *United States* (Ct. Cls.), 21 Fed. Supp. 267; and I. T. 3873, 1947–2 C. B. 82, which is predicated on these cases. He concludes that a deduction on account of this expenditure is not to be allowed, for the reason stated in I. T. 3873 as follows:

---

[1] If the sum could be considered as an expenditure incident to the acquisition of an intangible capital item with an anticipated life of one year or less, then it would be proper to deal with it as a deduction for current expense. *W. B. Harbeson Lumber Co.*, 24 B. T. A. 542; *J. E. Mergott Co.*, 11 T. C. 47.

The life of the property in a license, which property is created by the custom of annual license renewal, can not be estimated with any degree of certainty. Consequently, a deduction for depreciation or obsolescence may not be allowed, nor may a deduction be allowed as a business expense, since the asset has an economically useful life beyond the taxable year.

In view of the foregoing, it is held that an amount paid as consideration for the transfer of a liquor license constitutes a capital investment which must be carried on the books of the transferee as a capital asset until such time as the license is again transferred or terminated.

Petitioners argue that the cases which are relied upon by respondent and which form the basis of respondent's I. T. 3873 and his position in this proceeding are distinguishable from the instant case and have been in effect overruled by *Bonwit Teller & Co.* v. *Commissioner* (CCA-2), 53 Fed. (2d) 381; certiorari denied, 284 U. S. 690. Undoubtedly, there are factual differences between the instant proceeding and those cases cited and relied upon by respondent. In two of the cited cases, the expenditures were made directly and specifically in the purchase of "renewal rights" for liquor licenses; in all of them there was a long established custom of annual renewal of such licenses; and the municipal authorities treated the "renewal rights" as privileges separate from the licenses themselves. However, a realistic appraisal of the facts in the instant case indicates no such difference in fact which can distinguish it in principle from the cases cited. It is obvious that the greater part of the $8,000 expended by petitioners was for privilege of renewing the license. While petitioners made a net profit of approximately $1,000 during the period April 24 to September 30, 1944, it is not reasonable to think that they made an expenditure of $8,000 for the privilege of operating a liquor store for approximately five months. The fact that they expended this sum indicates that they felt the custom and practice of renewing licenses in Jacksonville was sufficiently established to give value to the anticipated privilege of renewal attached by such custom and practice to the annual license; and the fact that others in the community paid sums as high as $20,000 in order to acquire an annual liquor license indicates that the custom and practice of renewing such licenses was accepted as established in the community, and was recognized as a valuable right attaching to the annual license. It is our judgment that petitioners paid $750 for the annual license under which they operated for five months in 1944, and $7,250 for the reasonably anticipated privilege of obtaining similar licenses in subsequent years which attached to such license by reason of the practice of municipal authorities in actually renewing such licenses to the holders thereof. The fact that no part of the $8,000 paid by petitioners was specifically designated by them as payment for "renewal rights" and the fact that the municipal authorities did not treat the "renewal rights" as property rights separate from the licenses them-

selves, can not, in our opinion, preclude a conclusion that petitioners expended $7,250 for what generally may be termed the renewal privileges attaching to the annual license.

Under this interpretation of the facts of the instant case, we are unable to distinguish it in principle from the cases relied upon by respondent.

There remains the question of whether these cases have been, in effect, overruled by *Bonwit Teller & Co.* v. *Commissioner, supra.* Although the three Board of Tax Appeals cases to which we have referred were decided prior to *Bonwit Teller*, the *Elston* case was decided six years thereafter. As to the latter opinion, petitioners urge that apparently no consideration was given to the rule of the *Bonwit Teller* case, and, therefore, it does not represent persuasive authority.

In *Bonwit Teller & Co.* v. *Commissioner, supra,* one of the questions presented was the period during which the value of a leasehold for a term of years should be depreciated, where the lessee had an option to renew the lease at a rental to be determined by an appraisal of the property at the time of renewal. The leasehold had 19 years to run and contained an option to renew for 21 more years. It was there held, under the facts presented, that the period over which the exhaustion of the leasehold was to be spread was the original term of the lease, without regard to the possibility of renewal. It should be observed that in that case the renewal privilege had not been exercised, and the court was not presented with the question of the probability of renewal. Moreover, the *Bonwit Teller* case does not lay down an inflexible rule that the period of exhaustion is the term of the original lease, irrespective of the circumstances attendant to the renewal option; but rather it stands for a rule which must be molded to the facts and circumstances present in each case. Cf. *379 Madison Avenue, Inc.* v. *Commissioner* (CCA-2), 60 Fed. (2d) 68; 4 Mertens, Law of Federal Income Taxation, sec. 23.93.

In our consideration of the scope of the *Bonwit Teller* case, we observed in *353 Lexington Avenue Corporation,* 27 B. T. A. 762, at page 764:

Respondent points out that a situation might arise where the original term of a lease was a comparatively short period, say a year or two, with an option to renew for 21 years, and in such case a write-off over the original term would not be justified. Under such circumstances it seems to us very doubtful whether an exhaustion allowance confined to the original term would meet the statutory requirement of reasonableness. However, that is a question to be decided when the occasion arises.

And we stated in *Leonard Refineries, Inc.,* 11 T. C. 1000, at page 1010, that:

Where it appears certain that an option to purchase leased premises will be exercised, over what period should assets on those premises be depreciated?

Decisions pertinent to this question deal with a comparable situation where there is a reasonable certainty that a renewal provision in a lease will be exercised. Under those circumstances the courts have held the proper period for taking depreciation is the remaining life of the original term plus the renewal period. *Pittsburgh Union Stock Yards Co.* v. *Commissioner*, 46 Fed. (2d) 646; *1620 Broadway Corporation*, 36 B. T. A. 149, 152; *Standard Tube Co.*, 6 T. C. 950. By analogy, where it is apparently certain that the option to purchase leased land will be exercised, depreciation rates for assets located on such land should be based on their estimated physical lives. * * *

Some of the uncertainty and confusion which the decided cases presented before 1939 have now been allayed by the incorporation of T. D. 4957, 1939–2 C. B. 87, in respondent's regulations. Regulations 111, sec. 29.23 (a)–10. It is there generally provided that where the facts show that the lease has been renewed, or that there is reasonable certainty that the lease will be renewed, the period should encompass not only the original term of the lease, but the renewal period. We recognized the correctness of this section of the regulations in *Standard Tube Co.*, 6 T. C. 950, 955.

Petitioners also seek to derive strength for their contentions on this point from the cases involving baseball players' contracts, which are generally contracts for the period of one year, containing renewal options running in favor of the club. *Pittsburgh Athletic Co.*, 27 B. T. A. 1074; affd. (CCA–3), 72 Fed. (2d) 883, is an example. In that case, relying upon *Bonwit Teller & Co.* v. *Commissioner, supra*, we overruled earlier authorities in which we held that the renewal clause in the contracts gave them a life of more than one year. However, that line of cases, as well as the *Bonwit Teller* line, does not control the instant case, because of the significant factual dissimilarities. In this connection, the language in *Helvering* v. *Kansas City American Association Baseball Co.* (CCA–8), 75 Fed. (2d) 600, 604, is persuasive:

* * * * * * *

The petitioner contends that there is a distinction in the lease in the Bonwit Teller Case and the contracts here involved, in this, that in the case of the lease there could be no certainty at the time of its execution that the renewal privilege would be exercised at the end of a period of nineteen years; while in the case of ball players' contracts covering a term of one year renewal was so reasonably certain that the contracts, instead of being for one year, were, in effect, for the useful playing life of the player. However, this contention, as to the value and character of the renewal provisions of the contracts, is answered in the case of the *Commissioner* v. *Pittsburgh Athletic Company* (C. C. A.) 72 F. (2d) 883, 884, wherein the court said: "An examination of the standard option clause contained in each contract reveals that the right given the respondent by the option is not absolute but qualified. Its right is dependent upon the player's continuance in professional baseball, which may be terminated because of his objection to an assignment to another club, or to the wages offered in a new agreement, or for many other reasons. Whatever the reason, if the player should cease to engage in professional baseball, the option for renewal of his contract would become valueless."

Obviously, the options add to the value of the contracts; but it cannot be said that they extend the life of the contracts beyond one year, because of the uncertainty of their renewal. The option is qualified; the power of the taxpayer to renew the contracts is not absolute, but is contingent on the inclination and ability of the players to render personal services requiring a high degree of skill and training.

The petitioner has directed the attention of the court to a number of cases involving leases that contained options to renew wherein it has been held that the entire exhaustion allowance should not be allocated to the comparatively short term of the original lease when it clearly appeared that the chief value was in the right to renew for a long term. In other words, where the original term of a lease is of short duration and there is an absolute option to renew for a long term, exhaustion over the original term could not be justified. Under such circumstances, it is doubtful whether an exhaustion allowance confined to the original term would meet the statutory requirement of reasonableness. Such authorities are not applicable here.

* * * * * * *

In the lease cases following *Bonwit Teller* and in the baseball players' contract cases, we find that, although the option provision may have added some value, the expenditures in the lease cases were primarily for the use of the leased premises during the term of the original lease and, in the baseball cases, for the services rendered during the year of the contract. Here, however, just the converse is true. The expenditure by petitioners was made primarily for the purposes of acquiring the expectation of continued renewal of the liquor license, and not for the purpose of engaging in the liquor business for only a part of the year for which the license was acquired. Moreover, it is simple to allocate that part of the expenditure made for the purpose of engaging in business for a year and that part properly attributable to the option privilege acquired by petitioners. No such allocation can generally be made in the authorities that petitioners seek to rely upon.

In addition, we are confronted with the fact of actual renewal of the license during the year before us, and the vitality of this event can not be minimized. See *East Kauai Water Co., Ltd.*, 11 T. C. 1014; but cf. *1620 Broadway Corporation*, 36 B. T. A. 149.

In our judgment, neither the *Bonwit Teller* case nor the baseball players' contract cases have weakened the validity of the authorities relied upon by respondent.

Petitioners' alternative contention, that the amount of $7,250 is deductible as a loss under section 23 (e), is not strenuously pressed upon brief, and is, in our opinion, without merit.

In his determination of deficiency, respondent allowed as deduction on account of the expenditure made for the license only $312.50, as representing "5/12ths of $750 annual fee pro-rated to cover period April 25, 1944, to September 30, 1944." We are of the opinion that the full amount of $750 should have been allowed. Before petitioners could have engaged in business during those five months, it was neces-

**1212**

sary that they have a license for the year ended September 30, 1944. Unlike the case of *William Zakon, supra*, the annual license paid for by petitioners was used by them in their actual operation of a liquor store during a considerable párt of the license year. We have interpreted the facts as requiring a conclusion that $750 was expended by petitioners for the license under which they did business for the five-month period. It is, therefore, deductible as a current expense. See footnote 1. Respondent's argument on brief implicitly recognizes the propriety of this adjustment.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*