Aiken Drive-In Theatre Corporation v. Commissioner.
Aiken Drive-In Theatre Corp. v. Commissioner
Docket No. 56196.
United States Tax Court
T.C. Memo 1956-136; 1956 Tax Ct. Memo LEXIS 158; 15 T.C.M. (CCH) 684; T.C.M. (RIA) 56136; June 8, 1956
*158 Income tax: Deduction of cost of improvements to leased premises. - Petitioner made improvements upon premises which it occupied under a lease for five years with provisions for renewal for three successive five-year terms unless the petitioner notified the lessor at least 30 days prior to the end of each such respective term that it intended to terminate the lease. At the close of the taxable year there was a reasonable probability that the petitioner would elect to terminate the lease at the end of the first five-year period. Held, that for the taxable year the petitioner is entitled to deduct one-fifth of the cost of such improvements. Richard E. Thigpen, Esq., 525 North Tyron Street, Charlotte, N.C., and Robert L. Hines, Esq., for the petitioner. L. P. Shields, Esq., for the respondent. *159 ATKINS
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the petitioner's income and excess profits taxes for the taxable year ended March 31, 1953, in the amount of $4,201.69. The question presented for decision relates to the period over which there should be amortized or depreciated the cost to the petitioner of buildings, equipment, and improvements constructed or placed upon the land held by the petitioner under a lease and used in the operation of its drive-in theatre. Findings of Fact Part of the facts are stipulated and are found as stipulated. The petitioner was incorporated under the laws of the State of South Carolina on March 24, 1952, and has its principal office in Charlotte, North Carolina. It was, during the taxable year ended March 31, 1953, and is, at the present time, engaged in the business of operating a drive-in theatre in Aiken County, South Carolina. It filed its income tax return for the fiscal year ended March 31, 1953, with the director of internal revenue for the district of North Carolina. Prior to April 1952, the petitioner's president made a preliminary survey of the conditions in and around *160 Aiken County, South Carolina. It was found that the construction of an H-bomb plant in Aiken County had caused an influx of workers, with about 15,000 people living in trailer camps. During construction of the plant the number of migratory workers who moved into the area eventually reached a peak of approximately 35,000. Many of these workers resided in temporary housing which was within a half of a mile of the site upon which the petitioner built its drive-in theatre. On April 7, 1952, the petitioner, as lessee, entered into a lease agreement with Everett T. Summerall and other individuals covering certain farm land upon which the openair theatre was to be constructed. The petitioner is required to pay an annual rental of $2,500 "for each and every year under this lease and for any and all extensions or renewals thereof, as provided" in the agreement. The rent is payable annually on the 7th day of April. The petitioner is to have and to hold the premises, and to enjoy quiet and peaceful possession thereof, "for the term of this lease or any extensions or renewals thereof * * *." The lease then provides: "THE TERM OF this lease shall be for a period of five (5) years commencing *161 with the 7th day of April, 1952, and terminating on the 6th day of April, 1957. "AND IT IS AGREED, that unless notice in writing at least thirty days prior to the expiration of the period herein specified shall be given by the Tenant to the Landlord of the Tenant's intention to vacate the premises upon the expiration of the lease, then it is hereby agreed that this lease will be considered as extended and binding from the termination of the period herein specified for an additional term of five (5) years, commencing with the 7th day of April, 1957 and ending on the 6th day of April, 1962. "AND IT IS AGREED, that unless like notice be given in writing at least thirty days prior to the expiration of said additional five year term, then it is hereby agreed that this lease will be considered as extended and binding from the termination of said five year additional period for an additional term of five years commencing on the 7th day of April, 1962 and ending on the 6th day of April 1967. "AND, IT IS AGREED, That unless like notice be given in writing at least thirty days prior to the expiration of the second additional five year term, then it is hereby agreed that this lease will *162 be considered as extended and binding from the termination of the aforesaid ten year additional terms for an additional term of five years commencing with the 7th day of April, 1967 and ending on the 6th day of April, 1972." Upon default in the payment of rent or in the performance of the agreement, or in the event the petitioner shall become insolvent or vacate the premises, the rent that would accrue for the unexpired term is to accelerate and become due and payable to the landlord, and the landlord may terminate the lease. The petitioner shall nevertheless be entitled to the use of the premises for any period for which the rent is paid. The lease contains the following provision: "AND IT IS AGREED, that the Tenant shall be permitted to construct building or other structures on the leased premises and to drain and/or grade the same. All permanent improvements to the property, including but not limited to grading, underground wiring, structures, screen tower, fence, box office, and all other permanent improvements shall become the property of the Landlord after they have been constructed by the Tenant; provided, however, in the event Tenant should abandon the leased permises, *163 during the term of this lease, or at the expiration thereof, Tenant shall remove any or all of the installations and improvements therefrom, including those mentioned hereinabove, and also hard surfaced driveways, all sodded areas and fences, to the end that the property is then restored by Tenant, at its expense, to suitable farming status, at the option of Landlord. All furniture, fixtures, and equipment shall be and remain the sole property of the Tenant and may be exchanged, removed, or replaced at any time the Tenant may so desire." When the lease was executed, the petitioner's president and the lessors intended to make a lease for a term of five years with options in the lessee for renewal for additional periods. These individuals also understood that upon default of the terms of the lease by the petitioner it would be liable only for rent for the balance of the five-year term then in effect. During and at the close of the taxable year ended March 31, 1953, it was the intention of the petitioner's president to operate the theatre for five years, and it was his belief that the lease would not be continued after the first five-year period. On or about April 1, 1952, the petitioner *164 made certain improvements to the property covered by the lease agreement. The various improvements, their costs, the useful life determined by the petitioner, the depreciation claimed on the income tax return for the fiscal year ended March 31, 1953, the useful life determined by the respondent, and the depreciation allowed by the respondent for that year, are as follows: AIKEN DRIVE-IN THEATRE CORPORATION
Docket No. 56196
Stipulated
Life
Depreciation
Life
Depreciation
Asset Subject to Depreciation
Cost
(Petitioner)
Claimed
(Respondent)
Allowed
1. Electrical Fixtures and Equip-
ment
$ 3,679.94
5 Years
$ 735.98
15 Years
$ 245.33
2. Screen Tower
6,000.00
5 Years
1,200.00
15 Years
400.00
3. Box Office
5,600.00
5 Years
1,120.00
20 Years
280.00
4. Booth and Concession Stand
16,023.45
5 Years
3,204.69
20 Years
801.17
5. Fence
2,200.00
5 Years
440.00
10 Years
220.00
6. Paving
$ 4,090.63
5 Years
$ 818.12
10 Years
$ 409.06
7. Electrical Wiring
5,696.87
5 Years
1,139.37
15 Years
379.79
8. Plumbing
3,100.00
5 Years
620.00
15 Years
206.67
9. Grading
4,043.00
5 Years
808.60
20 Years
202.15
10. Engineering and Surveying
575.00
5 Years
115.00
20 Years
28.75
11. Storage Room
1,200.00
5 Years
240.00
20 Years
60.00
12. Concession Equipment
3,435.45
8 Years
429.43
10 Years
343.55
13. Furniture and Fixtures
390.22
10 Years
39.02
10 Years
39.02
14. Projection and Sound Equipment
16,982.63
5 Years
3,396.52
5 Years
3,396.52
15. Office Equipment
110.00
10 Years
1.10 [1]
10 Years
11.00
16. Playground Equipment
690.00
8 Years
86.27
8 Years
86.27
Total
$73,817.40
$14,394.10
$7,109.28
*165 Most of the equipment used in the operation of a drive-in theatre is exposed continually to the weather. Even the machinery which is enclosed depreciates more rapidly than in the case of an indoor theatre due to dirt and dust from automobile traffic. At the present time all the trailer camps have moved from the area of the petitioner's theatre and all the temporary housing has been torn down. At one time there were four drive-in theatres in the area of Aiken, but now the theatre in question is the only one which is in operation in that area. The petitioner's receipts from box-office and concessions, for the period of operations up to the time of the hearing of this case, were as follows: Weekly
Revenue
Average
Opening about July 1, 1952
to March 31, 1953
$122,581.45
$3,143.11
Fiscal Year Ended March
31, 1954
136,708.98
2,629.01
Fiscal Year Ended March
31, 1955
72,847.93
1,400.92
Period April 1, 1955 to
November 29, 1955
47,329.80
1,352.28
No notice of intention to vacate the premises was given to the lessors by the petitioner during the fiscal year ended March 31, 1953, or *166 at any other time, and the subject has not been passed upon or discussed at any meeting of the petitioner's board of directors. The petitioner in its income tax return for the fiscal year ended March 31, 1953, claimed a deduction in the amount of $14,394.10 for depreciation. The respondent disallowed the petitioner's deduction for depreciation to the extent of $7,284.82, and allowed such deduction in the amount of $7,109.28. At the end of the taxable year in question there was a reasonable probability that the petitioner would elect to give notice of intent to vacate the premises upon the expiration of the first five-year term and thereby terminate the lease at that time. Opinion ATKINS, Judge: There is no question with regard to the proper amount of depreciation allowable upon the property listed as items 12 to 16, inclusive, in the tabulation contained in our findings. The petitioner concedes that the respondent's computation with respect to these items is correct. These items constitute personal property to which the petitioner retained title and which could be removed at any time. The controversy relates solely to the period over which the cost of items 1 to 11, inclusive, *167 are to be amortized. These items constitute improvements to the real estate covered by the lease, title to which vested in the lessors upon construction. Section 23 of the Internal Revenue Code of 1939 provides that in computing the net income there shall be allowed as deductions: "SEC. 23. DEDUCTIONS FROM GROSS INCOME. "In computing net income there shall be allowed as deductions: * * *
"(1) Depreciation. - A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - "(1) of property used in the trade or business, or (2) of property held for the production of income." Section 39.23 (1)-5 of Regulations 118 provides in part as follows: "* * * The reasonableness of any claim for depreciation shall be determined upon the conditions known to exist at the end of the period for which the return is made. * * *" Section 39.23(a)-10(b) of Regulations 118 provides in part as follows: "(b) The cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In order to return to such taxpayer his investment *168 of capital, an annual deduction may be made from gross income of an amount equal to the total cost of such improvements divided by the number of years remaining of the term of lease, and such deduction shall be in lieu of a deduction for depreciation. If the remainder of the term of lease is greater than the probable life of the buildings erected, or of the improvements made, this deduction shall take the form of an allowance for depreciation. In cases in which the lease contains an unexercised option of renewal, the matter of spreading such depreciation or amortization over the term of the original lease, together with the renewal period or periods, depends upon the facts in the particular case. As a general rule, unless the lease has been renewed or the facts show with reasonable certainty that the lease will be renewed, the cost or other basis of the lease or the cost of improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal. We have previously recognized the validity of the above regulations in Morris Nachman, 12 T.C. 1204; Standard Tube Co., 6 T.C. 950; Alamo Broadcasting Co., 15 T.C. 534; *169 and Hens & Kelly, Inc., 19 T.C. 305. The petitioner contends that the lease dated April 7, 1952, was for a term of five years commencing on that date and terminating on April 6, 1957, and that the cost of the improvements should be amortized over that term. The respondent contends that the lease is for a period of 20 years, with an option to terminate at the end of each 5-year period, and argues that the cost of the improvements should be amortized over a period of 20 years or their useful life, whichever is shorter. The lease itself states that its term shall be for a period of five years commencing April 7, 1952, with the further provision that unless notice in writing is given by the tenant at least 30 days prior to expiration of the 5-year period of its intention to vacate the premises, then the lease will be considered as extended. It is provided that the rental is to be $2,500 "for each and every year under this lease and for any and all extensions or renewals thereof, as provided." Both the president of the petitioner and the lessors considered this to be a 5-year lease with options to renew and that upon any default the petitioner would be required to pay rent *170 for only the remainder of the unexpired 5-year term. In the light of the terms of the instrument itself, together with the testimony, it is our conclusion that this lease was in effect a lease for five years with options to renew, and that the same considerations apply here as in the case of a lease with ordinary options to renew. It is to be noted that the rule laid down in the regulations is that the matter of spreading the depreciation or amortization over the term of the original lease, together with the renewal period or periods, depends upon the facts in the particular case, and that unless the facts show with reasonable certainty that the lease will be renewed the cost of the improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal. This matter, under the regulations, is to be determined in the light of the conditions existing at the end of the taxable year in question. The evidence shows that when this drive-in theatre was constructed and H-bomb plant was under construction in the vicinity and that there had been a large influx of workers living in close proximity to the theatre in trailer camps and *171 temporary housing. The president of the petitioner testified that during and at the close of the year in question, which was the first year of the lease, it was his intention to operate the theatre for five years and that it was his belief that the lease would not be continued abou the 5-year period. Accordingly, in the return for the taxable year the cost of these improvements was amortized over a 5-year period. In view of the fact that the patrons which the petitioner might expect consisted of temporary transient workers and that the population was therefore abnormal and would return to normal upon completion of the H-bomb plant, we are of the opinion that the petitioner was justified in concluding during the taxable year in question that it would not elect to continue the lease after the first 5-year period. Tending to corroborate the opinion expressed by the president of the petitioner are the subsequent facts that prior to the time of hearing in this case the trailers and temporary housing had been removed, three of the four drive-in theatres in the area had ceased operation, and the receipts of the petitioner had continued to decline each year. We have, therefore, found as *172 a fact that at the end of the taxable year in question there was a reasonable probability that the petitioner would elect to terminate the lease at the end of the first 5-year period. We accordingly conclude that for the taxable year ended March 31, 1953, the petitioner is entitled to deduct one-fifth of the cost of the permanent improvements listed as items 1 to 11, inclusive, in the tabulation in our findings. Decision will be entered under Rule 50. Footnotes
1. Apparently an error. The same figure appears on the return.↩