*Decisions will be entered under Rule 50.*

## GEORGE WYNN SMITH AND MALEITA E. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3776–69. Filed October 26, 1970.

George Wynn Smith, pro se.
*John M. Wylie*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income tax for the fiscal years ended April 30, 1966 and 1967, in the amounts of $5,187.14 and $12,338.85, respectively. Due to concessions by petitioners only two issues remain for our decision. The first is whether the cost of acquiring certain upland cotton acreage allotments in each of the years in question is an ordinary and necessary business expense under section 162, I.R.C. 1954, or is a

---

nondeductible capital expenditure under section 263, I.R.C. 1954.[1] The second issue is whether a $1,000 legal fee paid to obtain a partition of land inherited by petitioner George Smith, his brother, and sister as tenants in common, is deductible under section 162 or is a nondeductible capital expenditure under section 263.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference.

George Wynn and Maleita E. Smith, husband and wife, resided in Tiptonville, Tenn., at the time of the filing of the petition herein. They filed joint Federal income tax returns for the fiscal years ending April 30, 1966 and 1967, with the district director of internal revenue in Nashville, Tenn. Hereinafter, for purposes of clarity, only George Wynn Smith will be referred to as petitioner.

During the fiscal years in question petitioner owned farmland in Lake County, Tenn., which was used for growing upland cotton. Petitioner has been in the business of growing and selling upland cotton since 1931.

In December of 1965, pursuant to the provisions of the Agricultural Adjustment Act of 1938, as amended,[2] petitioner purchased upland cotton acreage allotments for $13,012.01. Similarly in December 1966, petitioner purchased upland cotton acreage allotments for $22,162.25.[3] Petitioner has been allocated an acreage allotment for upland cotton for every year in which a national acreage allotment for upland cotton has been promulgated by the Secretary of Agriculture pursuant to the Agricultural Adjustment Act of 1938, as amended. No national allotments for upland cotton were in effect during World War II, 1943–49, nor during the Korean conflict, 1951–53.

The Act makes it uneconomical for a farmer to grow upland cotton without an allotment by providing for penalties in such cases. Petitioner has never grown cotton in excess of his allotment, nor has he ever lost an allotment due to failure to grow cotton in at least 1 of 3 successive years as required by the Act.

In both of the years in question petitioners deducted as ordinary and necessary business expenses the cost of the acquired cotton acreage allotments.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

[2] Act of Feb. 16, 1938, ch. 30, sec. 1, 52 Stat. 31, as amended, 7 U.S.C. sec. 1281 (1964 ed.).

[3] The record does not disclose to whom the payments were made. Apparently, from typical exhibits in evidence, the transfers and divisions of allotments were made on forms and in accordance with conditions prescribed under 7 U.S.C. sec. 1334(a), and the regulations of the Secretary of Agriculture.

Petitioner was appointed administrator of his mother's estate, who died intestate in March 1965. From 1937 until her death, petitioner's mother owned four farms in Lake County, Tenn. The total acreage was 775 acres: one of 305 acres (A); one of 83 acres (B); one of 167 acres (C); and one of 220 acres (D). At her death title to the farms passed to petitioner, his brother, and his sister as tenants in common under Tennessee law.

Petitioner desired to grow cotton on one of the four farms. He did not feel it practical, or economically feasible, to operate all four farms as a unit. At first petitioner's sister favored a partition, but later changed her mind. Petitioner believed a partition necessary so as to properly farm the lands. Petitioner did not care which of the four farms he would receive in a partition.

Petitioner retained counsel and instituted suit for partition of the property. However, while the suit was still pending the parties agreed to a partition by which petitioner's sister received farm A, petitioner's brother received farm D, and petitioner received farms B and C.

Petitioner paid his attorney $1,000 for his services and this amount was deducted by petitioners for fiscal year ended April 30, 1967, as an ordinary and necessary business expense.

The Commissioner denied both of the aforementioned deductions. As to the acreage allotments he determined them to be capital assets having indeterminate useful lives and hence not deductible by virtue of section 263. As to the legal fee, the Commissioner determined that such amount was incurred in the acquisition of a capital asset and also not deductible by virtue of section 263.

#### OPINION

We must decide if two items claimed by petitioners to be deductible business expenses, under section 162, are in fact so deductible or if these items are nondeductible capital expenditures. We hold that both the amounts paid for the cotton acreage allotments and the legal fee are in the nature of capital expenditures and hence not deductible by virtue of section 263.

*Upland Cotton Acreage Allotments*

Section 263 provides in pertinent part:

SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *

The regulations thereunder include some examples of capital expenditures one of which is:

Sec. 1.263(a)-2 Examples of capital expenditures.

The following paragraphs of this section include examples of capital expenditures:

(a) The cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year.

The petitioner contends that a cotton acreage allotment is not within the purview of section 263 because "a Capital Asset must not be ephemeral or fugitive, or of a character to be fickly spirited away." This contention lays great stress on the physical nature of those expenses within section 263. However, the physical or tangible aspect of that acquired by the expenditure is not controlling. What is covered by section 263 is concisely stated in *United States* v. *Akin*, 248 F. 2d 742, 744 (C.A. 10, 1957):

an expenditure should be treated as one in the nature of a capital outlay if it brings about the acquisition of an asset having a period of useful life in excess of one year *or if it secures a like advantage to the taxpayer which has a life of more than one year.* [Emphasis supplied.]

The Agricultural Adjustment Act of 1938, as amended, governs cotton acreage allotments. Basically the procedure is as follows.

Under the Act, if the Secretary of Agriculture determines that the total supply of cotton for the current marketing year will exceed the normal supply of cotton for such marketing year, the Secretary shall proclaim a national marketing quota, in terms of bales of cotton, for the crop of cotton to be produced in the next calendar year. 7 U.S.C. sec. 1342. After the proclamation of the national marketing quota, a referendum is then held before the end of the current marketing year and if two-thirds or more of the cotton farmers voting therein approve the quota, then the quota becomes effective for the next marketing year. 7 U.S.C. sec. 1343. Whenever a national marketing quota is proclaimed, the Secretary of Agriculture then determines and proclaims a national acreage allotment for the next calendar year's cotton crop. The acreage allotment is designed to make available an amount of cotton equal to the national marketing quota. The acreage allotment proclaimed is, in general, based on the national average yield of cotton per acre for the 4 preceding years. 7 U.S.C. sec. 1344(a). The national acreage allotment since 1953 has been apportioned, subject to certain exceptions, among the States based on the acreage planted to cotton during the preceding 5 years. The State then allocates the allotment to each county within the State on the same basis as the national allotment was allocated to the State. Finally the county committee for each county within the State allocates the allotment to

the farms within the county on the basis of the acreage allotment of the farm for the preceding year if such farm planted at least 75 percent of its allotment in the preceding year. 7 U.S.C. secs. 1344 (b), (e), (f) (8), 1377.

Further, under the Agricultural Adjustment Act of 1949, as amended,[4] the owner of an upland cotton acreage allotment is entitled to (1) price-support payments for cotton grown on allotted acreage; (2) acreage diversion payments for allotted acreage diverted from cotton production to approved conservation practices; and (3) price-support loans. 7 U.S.C. secs. 1421, 1428 (b), 1441, 1444 (d).

In its simplest terms, an acreage allotment is akin to a license; a license to plant cotton, for to plant domestic cotton without an allotment involves the incurrence of penalties which make such planting economically infeasible. 7 U.S.C. sec. 1346. The holding of this license then entitles the holder to certain benefits enumerated above. (For the principles applicable to the tax treatment of amounts expended for licenses see *Morris Nachman*, 12 T.C. 1204, affd. 191 F. 2d 934.)

However, the most important aspect of the license, aside from the license itself, is that it enables the holder to obtain a renewal of it in the succeeding year. The Act provides that in determining the apportionment of a county acreage allotment, priority shall go to farms on which cotton has been planted in any one of the immediate 3 preceding years. 7 U.S.C. sec. 1344 (f).

Considered in light of the penalties provided for growing cotton in the absence of an acreage allotment, it appears that the advantage accruing to petitioner by virtue of his acquisition of acreage allotments is one which will benefit him for more than 1 year. Therefore, we hold that the amounts expended in fiscal years April 30, 1966 and 1967, for purchase of upland cotton acreage allotments are not deductible business expenses but rather are capital expenditures under section 263.

## Legal Fees

Petitioner contends that the $1,000 legal fee paid in connection with the partition of lands inherited from his mother is deductible since the fee was "payment for helping to effect a division for the 'management, conservation and maintenance of property held for the production of income.' "

We note that this quoted language is that of section 212 relating to the deduction of nontrade or nonbusiness expenses and has no application to the case at hand where petitioner is claiming the expense as an ordinary and necessary business expense.

We conclude that the petitioner's purpose in seeking partition was

[4] Act of Oct. 31, 1949, ch. 792, tit. IV, sec. 401, 63 Stat. 1054.

to obtain sole legal title to a portion of the lands held in tenancy in common and thereafter to operate the farms for the production of cotton. On the facts we hold that the legal fee was paid for the acquisition of a capital asset and is a cost thereof, not deductible under section 263 and section 1.263(a)–2(a) of the regulations. In this connection see *Charles J. Livingood, Executor,* 25 B.T.A. 585, 591 (1932), where the Board stated:

We have consistently held to the effect that fees paid for legal services, where the acquisition of capital assets or the litigation of matters pertaining to assets of a purely capital nature were involved, were capital expenditures and therefore not deductible as ordinary and necessary expenses.

See also *Brown* v. *United States,* 280 F. Supp. 854 (D.N.M. 1967). Accordingly,

*Decision will be entered for the respondent.*