WAYNE AND LOY GREAVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Greaves v. Commissioner
Docket No. 5492-78.
United States Tax Court
T.C. Memo 1980-535; 1980 Tax Ct. Memo LEXIS 45; 41 T.C.M. (CCH) 468; T.C.M. (RIA) 80535; December 4, 1980
Lewis P. Terrell, for the petitioners. Douglas R. Fortney, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies of $ 89,327.37 and $ 522.62 in petitioners' Federal income taxes for 1973 and 1974, respectively. Because of concessions, the only remaining issue is whether petitioners suffered a deductible loss in 1973 when certain cotton allotments they had purchased were canceled by the Government. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. This case was consolidated for trial only with Condit v. Commissioner,T.C. Memo. 1980-536 (Dec. 4, 1980). At the time they filed their petition herein, petitioners Wayne *46 and Loy Greaves, husband and wife, resided in Seminole, Tex. Prior to and during 1973, petitioners were engaged in the business of farming. In the spring of 1973, petitioners purchased upland cotton acreage allotments from unrelated third parties and transferred them to irrigated land they owned in Gaines County, Tex. Petitioners' cost for these allotments was $179,147.30. Based on the transferred allotments, petitioners became eligible for and received Government subsidy payments in 1973. Upland cotton acreage allotments, discontinued after 1977, were part of the general scheme of the Agricultural Adjustment Act of 1938, 7 U.S.C. secs. 1281-1393 (1976). The purpose of the Agricultural Adjustment Act of 1938 is to ensure a reliable supply of cotton and other agricultural products. Under the Act, the Department of Agriculture maintains stable prices by limiting national production and maintains supplies by providing various forms of Federal farm subsidies. 7 U.S.C. secs. 1282, 1341 (1976). See generally Wickard v. Filburn,317 U.S. 111 (1942); Fulford v. Forman,245 F.2d 145 (5th Cir. 1957); Smith v. Commissioner,55 T.C. 133 (1970). *47 Acreage allotments generally allow the holder to market agricultural products without penalty. However, acreage allotments were not necessary to sell cotton in 1973; production limitations for upland cotton have not been in effect since 1970. Secs. 601-610, Agricultural Act of 1970, Pub. L. No. 91-524, 34 Stat. 1371; Sec. 1(19), Agriculture and Consumer Protection Act of 1973, Pub. L. No. 93-86, 87 Stat. 233; Sec. 601, Food and Agriculture Act of 1977, Pub. L. No. 95-113, 91 Stat. 933. However, cotton acreage allotments were still in effect in 1973 and entitled to holder to price-support payments for growing cotton, "set-aside" (soil conservation) payments for not growing cotton, and price-support loans. See generally Smith v. Commissioner,supra;Rev. Rul. 74-306, 1974-2 C.B. 58. For the years 1971 through 1977, the Secretary of Agriculture determined a national base acreage allotment for upland cotton, which was then apportioned among the states. 7 U.S.C. sec. 1350(a)-(b) (1976). Within each state, the ASCS "state committee" and local "county committees" of the Agricultural Stabilization and Conservation Service *48 (hereinafter "ASCS") supervised apportionment of acreage allotments to individual farms. 7 C.F.R. sec. 772.803 (1974). In general, acreage allotments were based primarily on a farm's allotment for the previous year. 7 C.F.R. secs. 722.401-.412 (1974). However, cotton acreage allotments could also be bought and sold, subject to county committee approval. 7 U.S.C. sec. 1344b(a) (1976); 7 C.F.R. secs. 722.417-.422 (1974). In 1973, Gaines County was the largest cotton producing county in the United States. 7 C.F.R. sec. 722.467(b)(2) (1974). On November 29, 1973, Deputy Administrator Clifton E. Adams (hereinafter "Adams") of the Department of Agriculture arrived from Washington, D.C., and suspended from office the Gaines County ASCS county committee and the ASCS county office manager for hindering an ongoing investigation into 1973 cotton acreage allotment transfers. On December 6, 1973, petitioners and some 160 other area farmers received notices form Adams, acting as the Gaines County ASCS office, canceling the transferred allotments they had purchased that spring. The gist of the letters was that improper farm combinations had misrepresented the transferee *49 farms' productivity for the purpose of obtaining Federal subsidies. The letters demanded repayment of all 1973 cotton program payments that had already been made on the transferred allotments. Around $7.5 million was involved in all. At about the same time, the chairman of the county committee was threatened with criminal prosecution. On December 19, 1973, petitioners timely filed a notice of appeal with Adams, who was still acting as the Gaines County ASCS office and county committee. However, petitioners did not really expect Adams to change his mind, since he had canceled the allotments in the first place. Nor did petitioners' attorney expect to reverse the cancellations on appeal to the ASCS state committee, because the Washington lawyers who were advising Adams would also be advising the state committee. The primary purpose of the appeal was to help petitioners avoid having to refund the 1973 cotton program payments they had received. As things turned out, petitioners' appraisal of their chances on appeal was substantially correct. Prior to any action on the appeal, petitioners received from the county committee 1974 acreage allotments of zero.Hearings held with Adams *50 failed to result in reinstatement of the canceled allotments. On March 29, 1974, the county committee did offer to reinstate partially petitioners' cotton allotments under a formula based on a number of production factors. The final figures were never computed, but the formula would not have resulted in any more than a 15 percent reinstatement. Petitioners never accepted the partial reinstatement offered by the Government, and the Government did not try to force the offer on petitioners. Petitioners would have had to accept the offer within a reasonable period of time for it to have become effective. Subsequently, petitioners failed to reverse Adams's decision at the Texas ASCS state committee level. On December 3, 1974, petitioners received a final letter from the state committee informing them that no further action on their appeal was possible and that the matter was considered closed. Petitioners did, however, continued to resist the Government's demands for refund. On their 1973 Federal income tax return, petitioners deducted $ 165,000 as a loss due to the canceled allotments. Respondent disallowed this deduction in its entirety. At trial, the parties stipulated that petitioners' *51 actual cost for the allotments in question was $ 179,147.30. OPINION In 1973, petitioners purchased upland cotton acreage allotments entitling them to various Federal support payments. The transfers were canceled in December 1973 by Deputy Administrator Adams of the Agricultural Stabilization and Conservation Service (ASCS). Petitioners immediately appealed the cancellations in connection with other litigation contesting demands by the Government for the refund of certain subsidy payments. By December 1974, the avenues of appeal with respect to the allotment cancellations had been exhausted. The Government's demands for refunds were not settled until sometime thereafter. The issue presented is whether petitioners suffered a deductible loss in 1973. Section 165(a) and (c) [1] allows individuals to deduct losses incurred in a trade or business or in a transaction entered into for profit. In this case the loss, if any, was incurred in petitioners' trade or business. However, to be deductible a loss must be evidenced by a closed and completed transaction. Sec. 1.165-1(b) and (d), Income Tax Regs.; United States v. White Dental Co.,274 U.S. 398 (1927). *52 The deduction is allowed only for uncompensated losses. Sec. 165(a)9 Thus, when the liability for a loss is being contested, or when there exists a claim for reimbursement, that portion of the loss which may be recovered is not deductible until the amount of the actual loss suffered is ascertainable with reasonable certainty. Sec. 1.165-1(d)(2)(i), Income tax Regs. Legal action against an insurer or the party responsible for the loss will normally postpone deduction until the claim is settled, adjudicated, or abandoned. See Lewellyn v. Elec. Reduction Co.,275 U.S. 243 (1927); Scofield's Estate v. Commissioner,266 F.2d 154 (6th Cir. 1959), affg. in part and revg. in part 25 T.C. 774 (1956); Schacht v. Commissioner,47 T.C. 552 (1967); Gale v. Commissioner,41 T.C. 269 (1963). Litigation with respect to a loss does not, however, invariably postpone the deduction. The regulations explicitly provide: Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement *53 of a loss is a question of fact to be determined upon an examination of all facts and circumstances. * * * [Sec. 1.165-1(d)(2)(i), Income Tax Regs.] The cases also hold that pending litigation does not postpone the deduction of a loss where there is no reasonable prospect of recovery. Rainbow Inn, Inc. v. Commissioner,433 F.2d 640 (3d Cir. 1970), revg. a Memorandum Opinion of this Court; Kugel v. Ryan,289 F.2d 329 (2d Cir. 1961) (Taxpayer's chances in litigation a question of fact; summary judgment inappropriate); Commissioner v. Highway Trailer Co.,72 F.2d 913 (7th Cir. 1934), revg. 28 B.T.A. 792 (1933). Thus, the narrow factual issue to be decided herein is whether, in 1973, petitioners had any reasonable chances of reversing Deputy Administrator Adams's 1973 cancellation of the cotton allotments they had purchased. Respondent argues that no deduction is allowable for any year prior to 1977 because petitioners could at any time have accepted the ASCS offer to reinstate partially the canceled allotments. With respect to 1973, respondent argues that petitioners, by appealing the cancellation, demonstrated *54 their belief that the allotments might eventually be reinstated. Petitioners argue that they knew their appeals had no chance of success and that, accordingly, they are entitled to a deduction for 1973. We find for petitioners. Based on the entire record in this case, we are convinced that petitioners' administrative appeals had no reasonable prospect of success. The purpose of the appeals was not really to recover the $ 179,147.30 petitioners spent on the canceled allotments. Instead, petitioners hoped to avoid having to pay refunds of Federal subsidy payments they had received with respect to the allotments. On their own merits, the appeals were doomed from the outset. See generally Parmelee Transportation Company v. United States,173 Ct. Cl. 139, 351 F.2d 619 (1965). We therefore hold petitioners are entitled to the loss deduction in 1973, the year in which their cotton allotments were canceled. Whether the character of the loss suffered should be capital or ordinary was not argued on brief by either party. At trial, counsel for respondent conceded that any loss allowable in 1973 would be ordinary. Accordingly, we do not address that issue. To reflect *55 concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Where not otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended.↩